IN THE DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 1:22-cv-20312 BLOOM/OTAZO-REYES

JOEY D. GONZALEZ RAMOS,
    Plaintiff,

v.

U.S. DEPARTMENT OF AGRICULTURE and
UNKNOWN EMPLOYEES OF THE DEPARTMENT
OF AGRICULTURE AND THE DEPARTMENT OF
JUSTICE in their individual and official capacity,
    Defendants.
_____/

## PLAINTIFF'S APPEAL MAGISTRATE JUDGE'S ORDER [ECF No. 49]

In accordance with Local Rule Local Rule 4(a)(1), I appeal the Magistrate Judge Otazo-Reyes' order dated August 23, 2022 granting John J. Murphy III's ("Murphy") protective order [ECF No. 49] ("Order").

### I.  INTRODUCTION

The instant complaint alleges that Defendant U.S. Department of Agriculture ("USDA"), trough government attorneys Vanessa Eisemann ("Eisemann") and John C. Truong ("Truong"), disclosed to Murphy my status on administrative leave which this Honorable Court has ruled is protected by the Privacy Act. *Ramos v. United States Dep't of Agric.*, No. 22-cv-20312-BLOOM/Otazo-Reyes, 2022 U.S. Dist. LEXIS 109691, at *9 (S.D. Fla. June 21, 2022) [ECF No. 40].

Eisemann and Truong were intervenors on behalf of the USDA in my case against ADR Vantage, Inc. ("ADR Vantage") for defamation in the District Court of the District of Columbia. *Joey D. Gonzalez Ramos v. ADR Vantage, Inc.*, case no. 18-cv-01690 (APM) ("ADR I"). Murphy was the defense attorney for ADR Vantage.

1

The USDA, specifically the Office of General Counsel ("OGC") under Steven Brammer ("Brammer"), had an interest in ADR I because it would have confirmed that attorneys under the direction of Brammer hired ADR Vantage to fuel a $30,000 smear campaign to discredit me after discovering my cooperation in a criminal investigation by the Office of Inspector General.

On November 20, 2019, the USDA informed me via letter that I will be placed on indefinite administrative leave following the Initial Decision from Merit System Protection Board ("MSPB") ordering my restoration with backpay. Exhibit A ("Initial Decision"). As confirmed by Murphy's email to Eiseman, the disclosure of my information apparently occurred a few months later, on or before March 2, 2020:

> Vanessa,
>
> Nice meeting you and John today. Following up on our discussion, is there any documentation that you can share with me showing the USDA has paid Plaintiff his back leave and placed him on admin leave? I'd like something to use as an exhibit for my MSJ to show that he has no damages.
>
> See you both tomorrow,
>
> Thanks,
> John

Exhibit B. Eleven days after the alleged discussion, Murphy published the following in a motion for summary judgment in ADR I:

> Equally disturbing, **Plaintiff's actions are being funded in part by the United States through his paid administrative leave**, all while he continues with the separate operation of his own law practice. To any objective observer, this is the epitome of waste, fraud and abuse.

Exhibit C (emphasis added). Following Murphy's publication, I attempted to obtain details about how he learned about my administrative leave. Eisemann and Truong ignored my inquiries. Murphy offered evasive responses and claimed that the information sought was protected by the attorney work product privilege. *See* Exhibit D.

On February 26, 2021, I filed a defamation lawsuit against ADR Vantage, Murphy and his law firm based on Murphy's false and defamatory accusations in ADR I that I committed waste, fraud and abuse for representing myself while on administrative leave. *Joey D. Gonzalez v. ADR Vantage, et. al.,* case No. 1:21-cv-00592-APM ("ADR II").

On February 18, 2022, I informed Murphy that I obtained his email to Eisemann through FOIA. In response, he attached his email and Eisemann's response to a motion in ADR II. Exhibit B. After I subpoenaed Murphy for deposition in this case, he resorted to onerous demands to avoid being deposed. Among them, to be paid $919 per hour for half a day of attendance. Exhibit E at 3. After he failed to provide case law supporting his demands, Murphy filed a 59-page letter/motion for a protective order requesting cancellation of his deposition or in the alternative a "reasonable rate". [ECF No. 43] at 3.

Most of Murphy's motion focused in matters outside this case and rather appeared as an exercise in self victimization than a legal pleading. Its only argument was that the testimony sought was protected by the work product privilege, however, Murphy omitted that he voluntarily published his email exchange with Eisemann in ADR II, thus effectively waiving the privilege he claimed. *Id*. at 2

On July 27, 2022, I filed a response to Murphy's motion. [ECF No. 45]. On August 3, 2022, before the time to file a reply expired, the magistrate judge called for a hearing. During the hearing no decisions were made about any issue raised by Murphy's motion or my response.

I was ultimately ordered to serve five written deposition questions "limited in scope to Murphy's alleged receipt of the private information underlying Plaintiff's claims in this case" ("Plaintiff's interrogatories") and to file Murphy's answers "for further consideration of any privilege claims asserted". [ECF No. 47]. After complying with the order, on August 23, 2022, Murphy's motion for a protective order was granted and his deposition cancelled.

3

As further explained, an analysis of the facts in connection of Murphy's procurement and publication of my status on administrative leave and his responses to Plaintiff's interrogatories should lead to the conclusion that: (1) Murphy's deposition is the only effective method to obtain testimony that will prove that the USDA disclosed my statutory protected information; (2) Murphy's testimony is relevant and will not invade the attorney work product privilege; and (3) Murphy's testimony is crucial for preparation of this case.

## II. ARGUMENT

According to Local Rule 4(a)(1), any party may appeal from a Magistrate Judge's order determining a motion or matter under subsection 1(c) within fourteen (14) days after being served with the Magistrate Judge's order. Such party shall file with the Clerk of the Court, and serve on all parties, written objections which shall specifically set forth the order, or part thereof, appealed from; a concise statement of the alleged error in the Magistrate Judge's ruling; and statutory, rule, or case authority, in support of the moving party's position.

The burden of showing good cause to preclude a deposition altogether is a heavy one *Dunford v. Rolly Marine Serv. Co.*, 233 F.R.D. 635, 637 (S.D. Fla. 2005). *See also West Peninsular Title Co. v. Palm Beach County*, 132 F.R.D. 301, 302 (S.D. Fla. 1990) (protective orders totally prohibiting a deposition are rarely granted absent extraordinary circumstances); *Wolf v. Coll. of the Holy Cross*, No. 20-14244-CIV, 2020 U.S. Dist. LEXIS 245851, at *6 (S.D. Fla. Dec. 31, 2020) *citing Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error.").

The Order did not sustain or overruled Murphy's numerous objections to Plaintiff's interrogatories, nor did it address the *unusual* or *extraordinary circumstances* precluding his deposition. It only concluded that Murphy "has not waived the attorney client privilege as to

4

matters not set forth in his answers" and that his answers to Plaintiff's interrogatories are "sufficient for the needs of the case." Order at 1-2.

It is unclear why the Order based its decision on the attorney client privilege since the objections raised by Murphy to Plaintiff's interrogatories were all based in the work product privilege. Even assuming that the objections were based on the attorney client privilege, there is no evidence indicating that the purpose of Murphy's alleged discussion with Eisemann and Truong was to secure legal advice or vice versa.

It is also not clear how the Order found that only 5 responses to Plaintiff's interrogatories were "sufficient for the needs of the case". Most, if not all of these responses were evasive, illogical, preceded by qualified language and containing improper "without waiving" objections. Exhibit F.

Additionally, some of these responses are inconsistent with earlier responses by Murphy to questions regarding how he learned about my administrative leave. In sum, Murphy's responses raised more questions than provided answers, thus confirming the need for his deposition.

**Protective Order Involving Attorneys In The Eleventh Circuit**

Regarding protective orders for depositions of attorneys, "the Eleventh Circuit has not adopted either the *Shelton* test [in *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986)] or the Second Circuit's flexible approach, and district courts throughout the [Eleventh] Circuit have used both approaches, or a combination thereof, giving this Court no clear guidance on evaluating deposition of opposing counsel." *Gaddy v. Terex Corp.*, No. 1:14-cv-1928-WSD, 2015 U.S. Dist. LEXIS 194116, at *10-11 (N.D. Ga. Oct. 28, 2015) (internal quotations omitted); *Axiom Worldwide, Inc. v. HTRD Grp. H.K. Ltd.*, No. 8:11-cv-1468-T-33TBM, 2013 U.S. Dist. LEXIS 8475, at *9 (M.D. Fla. Jan. 22, 2013).

Under the *Shelton* test, the moving party must show that (1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and non-privileged, and (3) the information is crucial to the preparation of the case. *Ebsco Gulf Coast Dev., Inc. v. Salas*, No. 3:15cv586/MCR/EMT, 2017 U.S. Dist. LEXIS 224506, at *12 (N.D. Fla. Nov. 29, 2017).

Courts have declined to apply *Shelton* when the proposed deponent is not trial or litigation counsel in the underlying case. *Gamache v. Hogue*, No. 1:19-CV-21 (LAG), 2022 U.S. Dist. LEXIS 62713, at *6 n.1 (M.D. Ga. Mar. 30, 2022); *see also Gaddy v. Terex Corp.*, at *8-9 *citing Williams v. Wellston City School Dist.*, No. 2:09-cv-566, 2010 U.S. Dist. LEXIS 122796, 2010 WL 4513818, at *15 (S.D. Ohio Nov. 2, 2010) ("When the attorney whose deposition is requested is not litigation counsel, is not in-house counsel who is involved to some extent in directing litigation, or is not an attorney who has advised the client concerning the same or similar litigation or has helped develop its defense strategy, the reasons for applying *Shelton* are much less compelling because there is little or no risk that the attorney's testimony might reveal any litigation strategy, or that the purpose of the deposition is to drive a wedge between the opposing party and its current counsel").

When the *Shelton* test is inapplicable, Courts in the Eleventh Circuit have also used the test in *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726 (8th Cir. 2002). *See Goodman-Gable-Gould Co. v. Tiara Condo. Ass'n*, No. 06-80441-Civ-Hurley/Hopkins, 2007 U.S. Dist. LEXIS 113061, at *10 (S.D. Fla. Mar. 19, 2007) *citing Pamida* at 731:

> However, despite the fact that the *Pamida* court noted that the concerns behind the *Shelton* test were not present where an attorney only seeks relevant information concerning a concluded case, the court nevertheless held that prior to allowing counsel to be deposed regarding previously concluded litigation, two conditions must be met: (1) the information must be peculiarly within counsel's knowledge and centrally relevant to the issues in the case; and, (2) there must be a showing that there has been a waiver of the attorney-client privilege and that the work product privilege has either been waived or that the standard of Federal Rule of Civil Procedure 26(b)(3) has been satisfied.

(Internal quoations and citations omitted). Although the issue before the court fits squarely into *Pamida* because the information sought is within Murphy's knowledge, is relevant and there has been a waiver of the work product privilege, in the abundance of caution, I will use the most stringent test in *Shelton* to demonstrate the reasons Murphy's deposition should be permitted.

   **1. The need for Murphy's deposition.**

Murphy published that I was in administrative leave in a motion for summary judgement in ADR I. Until then, the information about my administrative leave was not public and protected by the Privacy Act because it was maintained in a system of records by the USDA. Thus, Murphy's testimony is critical to this case because he has personal knowledge of who disclosed my information to him in violation of the Privacy Act.

Before this case was filed, Murphy has provided evasive and illogical responses to question regarding how he learned about my administrative leave. According to him, he learned about my status on administrative leave through an "educated" or "logical assumption" and had "never been provided, nor reviewed, a copy of [my] personal file." Exhibit D at 2 - 3. He only admitted to the alleged discussion mentioned in his email, after I provided a copy of his email to Eisemann.

Murphy earlier response was evasive because it is obvious that he did not need to see a copy of my personal file to know whether I was on administrative; he could have been told verbally by either Eisemann or Truong, as it appear it was the case.

Murphy's written responses to Plaintiff's interrogatories are a continuation of his attempts to avoid responding truthfully and without reservations about how he learned of my status on administrative leave. For example, in response to Interrogatory 3, asking how he knew that I was on administrative leave by March 2, 2020, Murphy responded with the following *non sequitur*:

> **It was further my assumption that Plaintiff was placed on some form of administrative leave since, by then, Plaintiff was a licensed attorney with an active law practice.**

Exhibit F at 2 – 3. This response defies logic; according to Murphy's premise, if a federal employee is a "licensed attorney" with an "active law practice", it follows that he or she must be placed or is in administrative leave. There is no logic, rule, statute or regulation that could support such assumption.

This response is also inconsistent with an earlier response where he claimed that:

> [I]t would be a logical assumption on my part, from the known facts, to infer that the USDA would not want you back in one of its facilities and, therefore, would put you on administrative leave so as to comply with the MBP's order while maintaining the integrity of the USDA's field office.

Exhibit D at 2. In his earlier response Murphy appears to know more about the reasons for my status on administrative leave in comparison with his latest response. To wit; in his latest response he claimed that he *assumed* that I was "on some form of administrative leave". However, in his earlier response he claimed that per the Initial Decision he made a "logical assumption" from "known facts" that the USDA "did not want me back in one of its facilities" and to comply with the Initial Decision, it placed me on administrative leave to maintain the "integrity of the USDA's field office".

The problem with this response it that it does not explain what *known facts* Murphy is referring to, nor how did he assume that to comply with the Initial Decision the USDA needed to place me on administrative leave to preserve the integrity of the USDA's field. Certainly, Murphy's assumption did not come from reading the Initial Decision, as there is nothing there that implied, much less ordered the USDA, to preserve its integrity by placing me on administrative leave. Clearly the source of information that instigated Murphy's *logical assumption* was not the Initial Decision.

In response to Interrogatory 2, asking for the documentation he expected to receive from Eisemann and Truong, Murphy answered:

8

> **any documentation that [the USDA] can share to confirm what I had already deduced – that Plaintiff was placed on administrative leave so as to comply with the MPB Order.**

It is worth reemphasizing that the "MPB Order" or the Initial Decision only ordered the USDA to restore me with back pay, not that the USDA place me on administrative leave. Exhibit A at 8 – 10. Therefore, Murphy could not have *deducted* from the Initial Decision, as he claimed, that I was on administrative leave. Also picturing Murphy, or anyone, asking for documentation about my administrative leave without first asking whether I was in administrative leave, does not make sense. The most logical explanation is that he confirmed that I was in administrative leave *before* asking for the documentation.

To the same interrogatory, he also responded:

> **Prior to March 2, 2020, I read the MPB decision ordering the USDA to retroactively reinstate Plaintiff's employment with back pay. I made the assumption the United States government complied with the MPB's Order.**

My research revealed that Murphy has no experience whatsoever with the MSPB. That might explain the reason he mistakenly refers to the MSPB as the "MPB". No less significant is that he could have assumed from reading the Initial Decision that the USDA would comply with the order for back pay, but again, there is nothing in the Initial Decision that ordered or implied that the USDA was to place me on administrative leave.

Finally, in the same interrogatory he concluded:

> **These were, however, just assumptions on my part at that time as I was piecing the information together. To the best of my recollection, the March 2, 2020 conversation referenced above was me inquiring about possible documentation that might be available to confirm my assumption.**

Murphy does not explain what questions he asked during the alleged discussion or to whom, nor what responses he received. He does not explain whether he wanted to confirm that the USDA complied with the order of back pay or whether he wanted to confirm that I was in administrative leave. Again, this response raised more questions than it provided answers.

9

The response also contradicts Murphy's actions after the alleged discussion with Eisemann and Truong took place. To wit, there is no logical explanation for sending an email requesting documentation about my administrative leave if earlier in the day he had already requested the same documentation in person and was refused or told that it did not exist.

The only plausible explanation for this response is that during the alleged discussion with Eismann and Truong he was told or was able to confirm that I was on administrative leave and hours later decided to send an email to obtain documentation.

Also, if Murphy *assumed* or was not sure that I was in administrative leave, as he claims, there is no explanation for assuring the court in ADR I that I was in administrative leave as shown in his motion for summary judgment:

> Equally disturbing, Plaintiff's actions **are being funded in part by the United States through his paid administrative leave,** all while he continues with the separate operation of his own law practice. To any objective observer, this is the epitome of waste, fraud and abuse.

Exhibit C. Murphy's choice of words to support his false and defamatory accusation that I was committing waste, fraud and abuse does not suggest an assumption. To the contrary, his words suggest confirmation or knowledge that I was in fact in administrative leave.

Murphy's responses to Plaintiff's interrogatories also contained qualified language such "to the best of my recollection" and a disclaimer reserving the "right" to supplement his answers "as additional information come to light which refreshes [his] recollection". This begs more questions; what additional information Murphy needs to assist him in refreshing his recollection? Or how long should I wait for Murphy to refresh his recollection and supplement his responses to Plaintiff's interrogatories?

Regarding his improper "without waiving" objections based on the attorney work product; it is well settled that these conditional responses waive the objection. *See Superior Consulting Servs. v. Shaklee Corp.*, No. 6:16-cv-2001-Orl-31GJK, 2017 U.S. Dist. LEXIS 222465, at *6 (M.D. Fla.

10

July 27, 2017) ("objecting to a discovery request, but responding to such request "subject to" or "without waiving" the objection is not permitted by the Federal Rules of Civil Procedure, and will result in a waiver of such objection."); *see also Wyndham Hotels & Resorts v. Leisure Getaways*, No. 6:17-cv-501-Orl-31GJK, 2018 U.S. Dist. LEXIS 238364, at *7 (M.D. Fla. Feb. 28, 2018) ("It is well-established that if a producing party objects to a discovery request, but then produces documents "subject to" or "without waiving" the objection, the Court will generally find that such objection is waived.").

Finally, Truong was deposed in this case. Eisemann's deposition is scheduled for September 7, 2022. These, according to Murphy's email, were the two attorneys present during his discussion about my administrative leave.

If the two witnesses that heard or received Murphy's request for documentation about my status on administrative leave can be deposed, there should be no reason for not deposing the witness that requested the documentation and published the information about my administrative leave. *See Gaddy* at *10 ("Where an attorney is a fact witness, his or her deposition may be both necessary and appropriate."); *see also Travelers Indem. Co. of Conn. v. Richard McKenzie & Sons, Inc.*, No. 8:17-cv-2106-T-23CPT, 2018 U.S. Dist. LEXIS 118625, at *17-18 (M.D. Fla. Mar. 14, 2018) ("Of particular significance here, other courts have recognized a party's right to depose an opposing party's trial counsel where that attorney has also participated in the events that underlie the action.").

In sum, Murphy's written responses are not sufficient for the needs of the case as determined by the Order. These responses, rather than providing definitive answers, raised more questions about his involvement in the disclosure of my information by the USDA. Murphy's conflicting and illogical responses, and his improper objections to questions regarding how he

learned about my administrative leave demonstrate that his deposition is the only effective way to obtain testimony that would allow me to prove my case against the USDA.

### 2. The testimony sought is relevant to the issues in this case.

According to the USDA's Fifth Affirmative Defense: "The Court lacks subject matter jurisdiction over Plaintiff's Second Amended Complaint because Defendant has not violated the Privacy Act of 1974, 5 U.S.C. § 552a *et seq.*" [ECF No. 42] at 13.

On the other hand, this Court has ruled that "[o]ne's status on administrative leave is related to one's job performance, the disclosure of which would be an unwarranted invasion of personal privacy and would violate the Privacy Act." *Ramos v. United States Dep't of Agric.*, No. 22-cv-20312-BLOOM/Otazo-Reyes, 2022 U.S. Dist. LEXIS 109691, at *9 (S.D. Fla. June 21, 2022). Accordingly, at issue is whether the USDA violated the Privacy Act by disclosing my status in administrative leave.

As previously explained, in 2017, OGC under Brammer initiated a smearing campaign using ADR Vantage to discredit me after discovering my cooperation with an OIG criminal investigation. In 2018, I was ultimately dismissed in retaliation for my protected activities. The Initial Decision in 2019 ordering my restoration with back pay reenergized Brammer's smearing campaign.

Knowing that he needed another third party like ADR Vantage to continue to discredit me, Brammer, through Eisemann and Truong, recruited Murphy to do the job. Indeed, Murphy was the ideal candidate. Throughout ADR I, he had resorted to innuendos, personal attacks and bullying tactics hoping to intimidate me. At times during ADR I, Murphy appear more as acting on behalf of the USDA's interest rather than ADR Vantage's.

Receiving my statutory protected information gave Murphy the perfect excuse to carry a new, and ultimately successful narrative while at the same time assisting Brammer in his ongoing

smearing campaign; that I was committing waste, fraud and abuse because I was representing myself in ADR I while in administrative leave. Exhibit C.

As a direct consequence of the USDA's disclosure of my information to Murphy, and fearing another unlawful disclosure of my statutory protected information, I refused to provide the USDA with personal and private information that it supposedly needed for a Tier 2 background investigation. My refusal ultimately resulted in my second dismissal after 18 years of employment.

Thus, the relevance of Murphy's deposition testimony in this case cannot be overstated. Without Murphy's publication of my status on administrative leave, this case would not have seen the light of day. Additionally, the USDA does not dispute the authenticity of Murphy's email exchange with Eisemann. In sum, Murphy has personal knowledge of the USDA's disclosure and is the only witness that can impeach the testimony of Eisemann or Truong.

    a.    **The work product privilege was waived**

As previously explained, nothing in Murphy's email exchange with Eisemann demonstrates that the attorney-client privilege is at issue. Additionally, all of Murphy's objections to Plaintiff's interrogatories were based in the work product privilege. Thus, the only issue before this Court, regarding privilege, is whether the underlying facts in Murphy procuring, obtaining and publishing my status on administrative leave are protected by the attorney work product.

Work product protection prevents most inquiries into an attorney's work files and mental impressions. The purpose of this protection is to protect the integrity of the adversary process by allowing a lawyer to work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. *Drummond Co. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1334-35 (11th Cir. 2018) (internal citations and quotation omitted).

The work product privilege is not broad enough to prohibit all inquiry regarding information received by counsel, all information obtained after the institution of litigation, all

information learned while working with counsel or all information learned while reviewing documents or having conversations in connection with the litigation. *Geico Cas. Co. v. Beauford*, No. 8:05-CV-697-24EAJ, 2006 U.S. Dist. LEXIS 70677, at *17-18 (M.D. Fla. Sep. 26, 2006). Thus, "[t]he [work product] doctrine applies only to documents a party has assembled and not to facts learned from those documents. *United States v. Sulzbach*, No. 07-61329-CIV-MARRA/JOHNSON, 2009 U.S. Dist. LEXIS 153844, at *8 (S.D. Fla. Feb. 10, 2009).

"[C]ourts addressing the issue of waiver have generally found that the disclosure of trial preparation materials to third parties waives the work product immunity if the disclosure substantially increases the opportunities for potential adversaries to obtain the information." *Ahern v. Pac. Gulf Marine*, No. 8:06-cv-2068-T-27MSS, 2007 U.S. Dist. LEXIS 115745, at *7 (M.D. Fla. Nov. 8, 2007) (internal quotations and citations omitted).

Equally well settled is the notion that one cannot simultaneously invoke the work product privilege while making affirmative use of the materials it wishes to protect from disclosure. This notion, known as the "sword and shield doctrine," essentially prohibits a party from partially disclosing and affirmatively relying upon aspects of privileged documents to support their claim and then shielding the underlying information from scrutiny by the opposing party. *Id*. at *8-9.

In *Ahern*, *supra,* the defendants disclosed through discovery a memorandum which quoted and summarized a report with their expert's ultimate conclusions. Upon receipt of the memorandum the plaintiff demanded a copy of the entire report. Defendants refused, asserting a claim of privilege under the work product doctrine. *See Id*. at *3-4. At a hearing on a motion to compel, defendants conceded that the memorandum containing the privileged information was disclosed without any effort to protect, by redaction or written qualifications, the expert's conclusions. *Id*. at *5.

In granting plaintiff's motion to compel, the *Ahern* Court held that the defendants were attempting to use the work product privilege as both a shield and a sword by partially disclosing and affirmatively rely upon aspects of privileged documents to support their claim and then shield the underlying report from scrutiny by the opposing party. *Id*. at *12.

Here, just as the defendants in *Ahern*, Murphy disclosed his email exchange with Eisemann in a motion in ADR II to defend that case. His email exchange with Eisemann, which tends to demonstrate how he learned about my status on administrative leave, is the main reason for his deposition. Faced with a subpoena, he claimed once again, that he was protected by the attorney work product. In his responses to Plaintiff's interrogatories, he again objected based on the privilege while simultaneously answering.

By voluntarily filing his email exchange with Eisemann and answering Plaintiff's interrogatories, Murphy demonstrated how he learned about my administrative leave. He cannot un-ring that bell and insulate from scrutiny his testimony based on a claimed privilege that he had waived at least two times.

**3. Murphy's testimony is crucial to the preparation of the case.**

During his deposition in this case Truong claimed that he has no recollection of the alleged discussion with Murphy on March 2, 2020. Eisemann also claimed that she does not remember disclosing my information to Murphy in responses to my interrogatories. The only witness that appears to remember the alleged discussion is Murphy.

Truong and Eisemann's responses and Murphy's attempts to avoid his deposition, should signal this Court that neither witness will admit to disclosing or receiving my information. Therefore, this case will be resolved based on circumstantial evidence. This will require the Court to assess the credibility of each witness to answer the central issue in this case: whether the USDA unlawfully disclosed my information protected by the Privacy Act.

Without Murphy's deposition testimony it will be a very difficult task for me to convince this Court that the USDA actually disclosed my information in violation of the Privacy Act. Moreover, in exchange for 5 evasive, conflicting and illogical responses that clearly required follow up questions, the Order denied me the give-and-take nature of an oral deposition, which most attorneys would agree is an integral discovery tool.

Under the terms of the Order, Murphy, the only witness that procured and published information protected under the Privacy Act, will be able to avoid his deposition altogether preventing me from obtaining information that is central to the main issue before this Court on matters outside any recognizable privilege or on a privilege that he voluntarily waived.

The federal rules do not support a complete bar to taking the deposition of Murphy on the basis that he is an attorney or that his responses during his deposition could potentially fall within a privilege category.

Indeed, the federal rules permit the deposition of "any person," Fed. R. Civ. P. 30(a) & 31(a), and do not carve out an exception for attorneys. *See* Fed. R. Civ. P. 26-32. Thus, it is clear that no special privilege or immunity shields a person from a deposition simply because that individual is an attorney. *See Bank of Am., N.A. v. Ga. Farm Bureau Mut. Ins. Co.,* No. 3:12-CV-155 (CAR), 2014 U.S. Dist. LEXIS 136914, 2014 WL 4851853, at *2 (M.D. Ga. Sept. 29, 2014) ("A lawyer's profession is not a talisman of privilege, automatically granting attorneys immunity from discovery under the federal rules.").

In sum, Murphy's testimony is crucial to the preparation of this case. Without his testimony I cannot confirm or impeach the testimony of Eisemann or Truong or vice versa, nor will this Court be able to hear testimony from the only witness that procured, and most likely received my statutory protected information.

## III. CONCLUSION

Murphy is not the opposing counsel in this case nor has he participated in the defense of the USDA in any underlying case. Therefore, his deposition does not threaten any litigation strategy in the matter at bar. Accordingly, Murphy is not entitled to avoid or limit his deposition in connection to his request to obtain information from the USDA regarding my status on administrative leave.

As expected, he provided evasive written answers to Plaintiff's interrogatories. These responses demonstrate that he is required to testify at a deposition where he cannot use the allotted time to accommodate his answer to his narrative or evade responding without follow up questions. Murphy's testimony is relevant because, as the only witness that remembers the alleged discussion mentioned in his email, only he can confirm receiving my statutory protected information from the USDA. Finally, his testimony is crucial for my preparation of the case because only Murphy can confirm or impeach Eisemann and Truong's testimony.

For the reasons stated here, I request that this Court reverse the Order and compel Murphy's deposition.

Submitted on September 3, 2022 by:

/s/ Joey D. Gonzalez
Joey D. Gonzalez Ramos
Florida Bar #127554
P.O. Box 145073 Coral Gables, FL 33114-5073
Tel: 305-720-3114
E-service: joey@joeygonzalezlaw.com
*Pro Se* Plaintiff